-EXHIBIT A-

# Cook County
# Clerk of the Circuit Court
### Electronic Docket Search
Chancery, Domestic/Child Support, Civil and Law Divisions

---

## Case Information Summary for Case Number
## 2019-CH-02050

Filing Date: 02/15/2019
Division: Chancery Division
Ad Damnum: $0.00

Case Type: CLASS ACTION
District: First Municipal
Calendar: 11

### Party Information

**Plaintiff(s)**
WILSON CRYSTAL

**Attorney(s)**
MCGUIRE LAW P C
55 W WACKER 9TH FL
CHICAGO IL, 60601
(312) 893-7002

**Defendant(s)**
REDBOX AUTOMATED
RETAIL,

**Defendant Date of Service**

**Attorney(s)**

### Case Activity

Activity Date: 02/15/2019

Participant: WILSON CRYSTAL

CLASS ACTION COMPLAINT FILED (JURY DEMAND)

Court Fee: 598.00

Attorney: MCGUIRE LAW P C

Activity Date: 02/15/2019

Participant: WILSON CRYSTAL

SUMMONS ISSUED AND RETURNABLE

Attorney: MCGUIRE LAW P C

Activity Date: 02/15/2019

Participant: WILSON CRYSTAL

CASE SET ON CASE MANAGEMENT CALL

Date: 06/17/2019
Court Time: 0930
Court Room: 2305

Judge: MEYERSON, PAMELA
MCLEAN
Attorney: MCGUIRE LAW P C

Activity Date: 02/19/2019

Participant: WILSON CRYSTAL

***CERTIFY CLASS(SET FOR MOTION HEARING)

Attorney: MCGUIRE LAW P C

Activity Date: 02/19/2019                    Participant: WILSON CRYSTAL

## NOTICE OF MOTION FILED

Attorney: MCGUIRE LAW P C

Back to Top

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data
in our master database.

**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 6/17/2019 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
    Cook County, IL

FILED
2/15/2019 2:54 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH02050

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED DATE: 2/15/2019 2:54 PM 2019CH02050

| | |
|---|---|
| CRYSTAL WILSON, individually and on behalf of all others similarly situated, | |
|     Plaintiff, | Case No. 2019CH02050 |
| v. | Hon. |
| REDBOX AUTOMATED RETAIL, LLC, | **JURY TRIAL DEMANDED** |
|     Defendant. | |

Plaintiff Crystal Wilson, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters:

### NATURE OF THE ACTION

Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Redbox Automated Retail, LLC in transmitting unsolicited, autodialed SMS text message advertisements to her cellular telephone and the cellular telephones of numerous other consumers across the country, in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

### JURISDICTION AND VENUE

1.    The Court has personal jurisdiction over the Defendant pursuant to 735 ILCS 5/2-209 and in accordance with the Illinois Constitution and the Constitution of the United States, because Defendant maintains its corporate headquarters within this state.

2.    Venue is proper in Cook County under 735 ILCS 5/2-101, because the transaction out of which this cause of action arises occurred in Cook County, as Defendant conducts business in Cook County, is registered to do business in Cook County, and the text messages at issue were transmitted via a short code utilized to transmit messages in Cook County.

FILED DATE: 2/15/2019 2:54 PM 2019CH02050

## PARTIES

3.      Plaintiff is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident of Las Vegas, Nevada.

4.      Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39). Defendant maintains, and at all times mentioned herein maintained, its corporate headquarters in Oakbrook Terrace, Illinois, and is registered to do business in Cook County.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

5.      In 1991, Congress enacted the TCPA to address consumer complaints regarding certain abusive telemarketing practices. The TCPA prohibits, inter alia, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of "advertisements" or "telemarketing" calls or texts, as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party to initiate such a call or text via an autodialer.

6.      Even in the face of the TCPA, automated and telemarketing calls thrived, prompting the U.S. Federal Trade Commission to enact the National Do Not Call Registry ("DNC List") pursuant to the Do-Not-Call Implementation Act of 2003, 15 U.S.C. § 6101 et. seq. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003). Registration for the DNC List began on June 27, 2003 and enforcement started on October 1, 2003.

7.      The TCPA prohibits companies from initiating telephone solicitations, via phone call or text message, to any number registered on the DNC List. *See* 47 C.F.R. § 64.1200(c)(2).

8.      Even after implementation of the DNC List, automated telemarketing continues to plague American cellular phone subscribers. "Since 2009, the FTC has seen a significant increase in the number of illegal sales calls . . . . Internet powered phone systems make it cheap and easy

- 3 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

for scammers to make illegal calls from anywhere in the world, and to display fake caller ID information, which helps them hide from law enforcement."[1]

9. Additionally, the TCPA prohibits companies from making calls or sending texts to non-business phone numbers before 8 a.m. and after 9 p.m. *See* 47 C.F.R. § 64.1200(c)(1).

10. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because such transmissions are a greater nuisance and invasion of privacy than live solicitation calls and receiving and addressing such calls and texts can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

11. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[2]

12. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text messages are received virtually anywhere in the world.

13. Unlike conventional advertisements, SMS message advertisements can actually cost recipients money because wireless phone users must pay their wireless providers either for

---

[1] Federal Trade Commission, National Do-Not-Call Registry, *available at* https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (last accessed Feb. 10, 2019).

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited April 6, 2018).

- 4 -

FILED DATE: 2/15/2019 2:54 PM  2019CH02050

each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

14.     Moreover, the transmission of an SMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15.     Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (314) ***-7187 (the "7187 Number"). The 7187 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

16.     Plaintiff's 7187 Number is, and at all times mentioned herein was, listed on the national DNC List.

17.     Defendant rents DVD, Blu-ray, 4K UHD videos and video games to consumers via automated rental kiosks located throughout the United States.

18.     Plaintiff maintains a customer-loyalty account on Defendant's website that is linked to the 7187 Number and has occasionally rented merchandise from Defendant's kiosks.

19.     At all times between on or about January 23, 2019 and the present, Plaintiff has expressly instructed Defendant not to send any text messages to the 7187 Number, via the settings page of her online account portal on Defendant's website. Specifically, between on or about January 23, 2019 and the present, Plaintiff has at all times maintained a toggle pertaining to enrollment in the "Redbox Text Club" in the "off" position, as shown in the following screenshot extracted from Plaintiff's cellular device:

FILED DATE: 2/15/2019 2:54 PM    2019CH02050



20. By maintaining the "Redbox Text Club" toggle in the "off" position in her online account portal at all times from on or about January 23, 2019 through the present, Plaintiff has expressly instructed Defendant not to transmit "members-only deals and news . . . to [her] phone" via text message over that period of time. Thus, Defendant plainly lacked Plaintiff's "prior express written consent" to transmit autodialed text messages to the 7187 Number between on or about January 23, 2019 and the present.

21. Despite Plaintiff's express instructions not to transmit text messages to the 7187 Number between on or about January 23, 2019 and the present, Defendant nonetheless transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous automated text message advertisements to the 7187 Number over that period of time.

FILED DATE: 2/15/2019 2:54 PM   2019CH02050

22.     For example, on or about January 30, 2019 at 12:13 p.m. and February 4, 2019 at 7:07 a.m., Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following texts to Plaintiff's 7187 Number, as depicted in the following screenshots extracted from Plaintiff's cellular device:



23.     Moreover, Defendant sent its text message solicitations to Plaintiff and others similarly situated at all times of day, including before 8:00 a.m. and after 9:00 p.m. in the recipients' time zones, as illustrated by its text sent on February 4, 2019 at 7:07 a.m. shown above.

24.     By way of further example, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, text messages to Plaintiff's 7187 Number at or about 7:03 a.m. and 7:07 a.m. on or about January 28, 2019 and January 29, 2019, respectively, as shown in the following screenshot extracted from Plaintiff's cellular device:

FILED DATE: 2/15/2019 2:54 PM 2019CH02050



25.    The text message advertisements sent by Defendant to the 7187 Number and to the telephone numbers of the members of the proposed Classes defined below originated from the telephone number 727272, which is a five-digit short code that is leased by Defendant or Defendant's agent(s) or affiliate(s) and used for operating Defendant's automated text marketing program.

26.    The hyperlinked http://m.rbx.me/* URLs that appear in the text messages transmitted by Defendant to the 7187 Number and to the numbers of the unnamed members of the Classes, examples of which are shown in the screenshots above, all re-direct to websites hosted at the domain name redbox.com, where Defendant advertises the commercial availability of its goods and services for profit. The domain names rbx.me and redbox.com are leased or owned, and are operated and maintained, by Defendant or its agent(s) or affiliate(s), and the webpages accessible therefrom are hosted, operated, and maintained by Defendant or its agent(s) or affiliate(s), on servers that are leased or owned by Defendant or its agent(s) or affiliate(s).

FILED DATE: 2/15/2019 2:54 PM 2019CH02050

27.     Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives a text message sent to the 7187 Number, each unsolicited text message that Defendant transmitted to the 7187 Number was invasive and intruded upon Plaintiff's seclusion. Plaintiff became distracted and aggravated as a result of receiving each of Defendant's text messages, which came at all hours of the day.

28.     None of the text messages Defendant sent to Plaintiff's 7187 Number or to the members of the Classes included a mechanism to stop receiving such messages in the future.

29.     Numerous other consumers have likewise been inundated with Defendant's text message spam, also at all hours of the day and without a way to make the messages stop, as reflected by the following sampling of complaints "tweeted" to Defendant on Twitter:







FILED DATE: 2/15/2019 2:54 PM   2019CH02050



**Chubbs** @Chubbs0ofuubb    Follow

Hey @redbox, I was just trying to sign up for trivia, not a text message every 5 mins. This is a small sample of what I've received. Please god make it stop.

what's new: http://m.rbx.me/ 05W5Qp

You're in! Look out for texts from Redbox between 11/3-11/6 with info on how to play trivia & earn an offer. Til then, see what's new: http://m.rbx.me/ 05W5Qp

You're in! Look out for texts from Redbox between 11/3-11/6 with info on how to play trivia & earn an offer. Til then, see what's new: http://m.rbx.me/ 05W5Qp

You're in! Look out for texts

1:53 AM - 2 Nov 2018



**danimal** @danmschE    Follow

@redbox please stop texting me after my bedtime about deals valid only for a few hours.

Redbox: Fall for a great deal today. Rent any disc, get a FREE 1-night DVD rental w/code 3WUTP26V. Add to wallet: http://m.rbx.me/ 13n1WI . Exp10/5/17@11:59p.

6:57 PM - 5 Oct 2017



**Throwaway1976** @throw1t5sux    Follow

@redbox Let's pump the brakes on the text messages this morning

STREAMING MOVIE DEAL! See Deals: http://m.rbx.me/N5MNfi TxtSTOP2stop    9:55 A

Redbox rings in 12 DAYS of ON DEMAND! Check in every day thru Dec 12th for a NEW STREAMING MOVIE DEAL! See Deals: http://m.rbx.me/N5MNfi TxtSTOP2stop

Redbox rings in 12 DAYS of ON DEMAND! Check in every day thru Dec 12th for a NEW STREAMING MOVIE DEAL! See Deals: http://m.rbx.me/N5MNfi TxtSTOP2stop

Redbox rings in 12 DAYS of ON DEMAND! Check in every day thru Dec 12th for a NEW STREAMING MOVIE DEAL! See Deals: http://m.rbx.me/N5MNfi TxtSTOP2stop

Redbox rings in 12 DAYS of ON DEMAND! Check in every day thru Dec 12th for a NEW STREAMING MOVIE DEAL! See

11:09 AM - 1 Dec 2018



**Felipe** @Felipe_Tivez    Follow

Seriously @redbox? I unsubscribe from the text messages and what do you do? Send me another one!

●□□□□ Verizon 🤖    10:43 AM    ◔ 🌼 90% ▬▬

❮ Messages    **727-272**    Contact

Reply STOP to cancel, HELP for help. Up to 2 msgs/week. New Terms bit.ly/rbxtrms

You are now unsubscribed from the Redbox Text Club and will not receive future messages. Rply with the word REDBOX to rejoin anytime. Msg&data rates

7:43 AM - 10 Oct 2017

- 10 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050









30.    All of the complained-of text messages sent by Defendant to the 7187 Number and to the numbers assigned to members of the putative Classes defined below constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4), "telemarketing" as defined by 47 C.F.R. § 64.1200(f)(12) & *id.* § 64.1200(a)(2), and "advertisements" as defined by 47 C.F.R. § 64.1200(f)(1), & *id.* § 64.1200(a)(2). This is because Defendant sent the text messages to market

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

and advertise the commercial availability of its services and goods, for the purpose of selling such goods to Plaintiff and the other members of the proposed Classes for profit.

31.     All of the complained of text messages sent by Defendant to the 7187 Number and to the numbers assigned to members of the putative Classes were calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i) and 47 C.F.R. § 64.1200.

32.     All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to the 7187 Number and to the numbers assigned to members of the putative Classes occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

33.     Specifically, Defendant utilized an "automated telephone dialing system" to transmit the aforementioned text messages to the 7187 Number and to the numbers assigned to members of the putative Classes because such messages were sent from a short-code telephone number used to message consumers *en masse*; because Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other proposed members of the Classes in an automated fashion and without human intervention, with hardware and software that stored, produced and dialed random or sequential numbers and/or received and stored lists of telephone numbers and which then dialed such numbers automatically.

34.     Neither Plaintiff nor the other members of the proposed Classes defined below provided their "prior express written consent" allowing Defendant or any affiliate, subsidiary, or agent of Defendant to transmit autodialed text message advertisements to the 7187 Number or to any of the other class members' mobile telephone numbers by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200.

- 12 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

35. The rules set forth in paragraph (c) and (d) of 47 C.F.R. § 64.1200 are applicable to the Defendant because the text messages it sent from its short codes were telephone solicitations to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." 47 C.F.R. § 64.1200(e).

36. Whether or not Defendant's text messages to Plaintiff and others similarly situated were sent via ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendant, or any agent or intermediary acting on its behalf, did not obtain the necessary consent required by, and thus violated, the telemarketing and time-of-day telephone solicitation restrictions of the TCPA and 47 C.F.R. § 64.1200(c)-(e).

37. Whether or not Defendant's text messages to Plaintiff and others similarly situated were sent via ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendant, or any agent or intermediary acting on its behalf, did not comply with, and thus violated, the telemarketing and DNC List restrictions of the TCPA and the telephone solicitation restrictions in 47 C.F.R. § 64.1200(c)-(e).

38. Defendant transmitted more than one text message advertisement over a 12-month period to Plaintiff's 7187 Number and to the cellular telephone numbers of the other members of the proposed After-Hours Class defined below outside of the permitted call times, that is, prior to 8:00 a.m. and after 9:00 p.m., in violation of the TCPA and the regulations set forth in 47 C.F.R. § 64.1200(c)(1).

39. Defendant transmitted more than one text message advertisement over a 12-month period to Plaintiff's 7187 Number and to the cellular telephone numbers of the other members of the proposed DNC List Class defined below despite the fact that such numbers had been registered on the DNC List for greater than 30 days, in violation of the TCPA and the regulations set forth in 47 C.F.R. § 64.1200(c)(2).

- 13 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

## CLASS ALLEGATIONS

40.     "ATDS Class" Definition. Plaintiff brings this civil class action on behalf of herself individually and as a representative of the following class of persons (the "ATDS Class") entitled to statutory damages under the federal TCPA:

> All persons in the United States who, during the four (4) years preceding the filing of this Class Action Complaint through the date on which class certification is granted, received one or more text messages promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant, at a time when such persons had not expressly consented in writing to be sent such message(s).

41.     "After-Hours Class" Definition. Additionally, Plaintiff brings this civil class action on behalf of herself individually and as a representative of the following class of persons (the "After-Hours Class") entitled to statutory damages under the federal TCPA:

> All persons in the United States who, within any 12-month period during the four (4) years preceding the filing of this Class Action Complaint through the date on which class certification is granted, received more than one text message promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant before 8:00 a.m. and after 9:00 p.m. in the recipient's time zone.

42.     "DNC List Class" Definition. Finally, Plaintiff brings this civil class action on behalf of herself individually and as a representative of the following class of persons (the "DNC List Class") entitled to statutory damages under the federal TCPA:

> All persons in the United States who, within any 12-month period during the four (4) years preceding the filing of this Class Action Complaint through the date on which class certification is granted, received more than one text message promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant more than 30 days after registering their telephone number on the National Do-Not-Call Registry.

43.     The "ATDS Class", the "After-Hours Class", and the "DNC List Class" are collectively referred to herein as the "Classes."

44.     Defendant, its employees, and agents are excluded from the Classes.

45.     Plaintiff reserves the right to modify the definition of the Classes (or add one or more subclasses) after further discovery.

46.     Plaintiff and all members of the Classes have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

47.     This Class Action Complaint seeks injunctive relief and monetary damages on behalf of Plaintiff and the members of each of the three Classes.

48.     The ATDS Class, the After-Hours Class, and the DNC List Class each satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

49.     Upon application by Plaintiff's counsel for certification of the ATDS Class, the After-Hours Class, and the DNC List Class, the Court may also be requested to utilize and certify one or more additional subclass in the interests of manageability, justice, or judicial economy.

50.     Numerosity. A substantial number of persons comprise each of the Classes, which are each believed to consist of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the ATDS Class, of the After-Hours Class, or of the DNC List Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

51.     Typicality. While residing in the United States, Plaintiff received at least one text message from Defendant from a short code, without having provided her prior express written consent to Defendant. Additionally, while residing in the United States, Plaintiff received within a 12-month period more than one text message sent by Defendant or an affiliate, subsidiary, or agent of Defendant before 8:00 a.m. or after 9:00 p.m. in Plaintiff's time zone. Consequently, the claims of Plaintiff are typical of the claims of the members of each of the Classes, and Plaintiff's interest is consistent with and not antagonistic to those of the other members of the Classes she seeks to represent. Plaintiff and all members of the ATDS Class have been impacted by, and face continuing harm arising out of, Defendant's transmission of autodialed text messages containing advertisements and telemarketing material offering for sale Defendant's goods and services for profit. Plaintiff and all members of the After-Hours Class have been impacted by, and face

- 15 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

continuing harm arising out of, Defendant's transmission of text messages before 8:00 a.m. or after 9:00 p.m. Plaintiff and all members of the DNC List Class have been impacted by, and face continuing harm arising out of, Defendant's transmission of text messages to telephone numbers registered on the national DNC List.

52.    Adequacy. Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Classes, and is able to fairly and adequately represent and protect the interests of the Classes. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional representatives or assert additional claims on behalf of either or both Classes, as well as to add one or more class(es) or sub-class(es).

53.    Competency of Class Counsel. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other state and federal data privacy and consumer protection statutes.

54.    Commonality and Predominance. There are well-defined common questions of fact and law that exist as to all members of the ATDS Class which predominate over any questions affecting only individual members of the ATDS Class. These common legal and factual questions, which do not vary from class member to class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

> a. Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;
>
> b. Whether such text messages were sent using an "automatic telephone dialing system";
>
> c. Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as

- 16 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d.  Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

55.     There are well-defined common questions of fact and law that exist as to all members of the After-Hours Class which predominate over any questions affecting only individual members of the After-Hours Class. These common legal and factual questions, which do not vary from class member to class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a.  Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted, within a 12-month period, more than one text message to the cellular telephones of Plaintiff and Class members before 8:00 a.m. and after 9:00 p.m.;

b.  Whether such after-hours text messages constituted "telephone solicitations" within the meaning of 47 C.F.R. § 64.1200(c);

c.  Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

56.     There are well-defined common questions of fact and law that exist as to all members of the DNC List Class which predominate over any questions affecting only individual members of the DNC List Class. These common legal and factual questions, which do not vary from class member to class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a.  Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted, within a 12-month period, more than one text message to the cellular telephones of Plaintiff and Class members despite such numbers having been registered for more than 30 days on the DNC List;

- 17 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

> b.  Whether such after-hours text messages constituted "telephone solicitations" within the meaning of 47 C.F.R. § 64.1200(c);
>
> c.  Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

57.    Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of any of the Classes is impracticable. Even if every member of the ATDS Class, the After-Hours Class, and the DNC List Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of each of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of the members of the Classes in individually controlling the prosecution of separate claims is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the members of the Classes can be readily located and notified of this class action through Defendant's text message transmission records and, if necessary, the records of cellular telephone providers.

58.    Additionally, the prosecution of separate actions by individual members of either of the Classes may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty members

- 18 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

of either of the Classes to protect their interests. The prosecution of individual actions members of either of the Classes could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

59.    Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect each of the Classes appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of the TCPA, 47 U.S.C. § 227(b)(3) & 47 U.S.C. § 227(b)(1)(A)
### (On Behalf of Plaintiff and the ATDS Class Members Against Defendant)

60.    Plaintiff incorporates by reference paragraphs 1-59 as if fully stated herein.

61.    Plaintiff and each member of the ATDS Class received at least one text message from Defendant that promoted the sale of Defendant's goods or services and was sent using an automatic telephone dialing system. Each such text message constituted "advertising" or "telemarketing" material within the meaning of the TCPA and its implementing regulations. Neither Plaintiff nor any other member of the ATDS Class provided Defendant prior express written consent to receive such text messages.

62.    Defendant's use of an automatic telephone dialing system to transmit text message advertisements to telephone numbers assigned to a cellular telephone service, including to Plaintiff's 7187 Number and the numbers of all members of the proposed ATDS Class, absent the requisite "prior express written consent," as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(b)(1)(A).

63.    As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff and all ATDS Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

64.     As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff and all ATDS Class members are also entitled to, and do seek, an award of statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

**SECOND CLAIM FOR RELIEF**
**Violation of the TCPA, 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(1)**
**(On Behalf of Plaintiff and the After-Hours Class Members Against Defendant)**

65.     Plaintiff incorporates by reference paragraphs 1-59 as if fully stated herein.

66.     Plaintiff and each member of the After-Hours Class received, within a 12-month period, more than one text message that promoted the sale of Defendant's goods or services before 8:00 a.m. and after 9:00 p.m. in the recipient's time zone. Each such text message constituted a telephone solicitation call within the meaning of the TCPA and its implementing regulations. Neither Plaintiff not any other member of the After-Hours Class provided Defendant prior express written consent to receive such text messages.

67.     Defendant's transmission of more than one text message solicitation after 9:00 p.m. and before 8:00 a.m. within any 12-month period to Plaintiff's 7187 Number and to each After-Hours Class member's cellular telephone number, as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(c)(5) and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(1) and 47 C.F.R. § 64.1200(e).

68.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(1) and 47 C.F.R. § 64.1200(e), Plaintiff and all After-Hours Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

69.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder, including but not limited to 47 C.F.R. § 64.1200(c)-(f) and 47 C.F.R. § 64.1200(e), Plaintiff and all After-Hours Class members are also

- 20 -

entitled to, and do seek, an award of statutory damages of up to $500.00 (or up to $1,500.00 for any willful or knowing violations) for each such violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

### THIRD CLAIM FOR RELIEF
### Violation of the TCPA, 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(2)
### (On Behalf of Plaintiff and the DNC List Class Members Against Defendant)

70.     Plaintiff incorporates by reference paragraphs 1-59 as if fully stated herein.

71.     Plaintiff and each member of the DNC List Class received, within any 12-month period, more than one text message that promoted the sale of Defendant's goods or services at a time more than 30 days after Plaintiff and each DNC List Class member had registered their respective phone numbers with the national Do-Not-Call Registry. Each such text message constituted a telephone solicitation call within the meaning of the TCPA and its implementing regulations. Neither Plaintiff not any other member of the DNC List Class provided Defendant prior express written consent to receive such text messages.

72.     Defendant's transmission of more than one text message solicitation within any 12-month period to Plaintiff's 7187 Number and to each DNC List Class member's cellular telephone number, as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(c)(5) and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e).

73.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiff and all DNC List Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

74.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiff and all DNC List Class

FILED DATE: 2/15/2019 2:54 PM     2019CH02050

members are also entitled to, and do seek, an award of statutory damages of up to $500.00 (or up to $1,500.00 for any willful or knowing violations) for each such violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Crystal Wilson prays for relief and judgment in favor of herself and the members of the proposed Classes, as follows:

A.    Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the ATDS Class for each of Defendant's violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);

B.    Statutory damages of $500.00 (or up to $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the After-Hours Class for each of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(1) and 47 C.F.R. § 64.1200(e), pursuant to 47 U.S.C. § 227(c)(5)(B);

C.    Statutory damages of $500.00 (or up to $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the DNC List Class for each of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), pursuant to 47 U.S.C. § 227(c)(5)(B);

D.    Injunctive relief prohibiting such violations of the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A) and 47 U.S.C. § 227(c)(5)(A);

E.    An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and

F.    An Order certifying this action to be a proper class action, establishing the Classes proposed herein and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the law firms representing Plaintiff as counsel for the Classes.

- 22 -

FILED DATE: 2/15/2019 2:54 PM    2019CH02050

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Classes, hereby demands a trial by jury on all claims so triable.

Dated: February 15, 2019                    Respectfully submitted,

                                            By: /s/ Eugene Y. Turin

                                            Eugene Y. Turin
                                            **MCGUIRE LAW, P.C.** (firm ID 56618)
                                            55 W. Wacker Drive, 9th Fl.
                                            Chicago, IL 60601
                                            Tel: (312) 893-7002
                                            Fax: (312) 275-7895
                                            eturin@mcgpc.com

                                            *Counsel for Plaintiff and the Putative Classes*

Return Date: No return date scheduled
Hearing Date: 6/17/2019 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court

2120 - Served                    2121 - Served
2220 - Not Served                2221 - Not Served
2320 - Served By Mail            2321 - Served By Mail
2420 - Served By Publication     2421 - Served By Publication
Cook County, IL
Summons - Alias Summons

(06/28/18) CCG 0001

FILED
2/15/2019 2:54 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH02050

FILED DATE: 2/15/2019 2:54 PM   2019CH02050

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CRYSTAL WILSON

_____
(Name all parties)

v.

REDBOX AUTOMATED RETAIL, LLC

c/o CT Corporation System

208 S. LaSalle St., Suite 814
Chicago IL 60604

Case No. 2019CH02050

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

Witness: 2/15/2019 2:54 PM DOROTHY BROWN

Atty. No.: 56618

Atty Name: MCGUIRE LAW, P.C.

Atty. for: CRYSTAL WILSON

Address: 55 W. WACKER DR., 9th Fl.

City: CHICAGO            State: IL

Zip: 60601

Telephone: (312) 893-7002

Primary Email: eturin@mcgpc.com

Secondary Email: _____

Tertiary Email: _____

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois   cookcountyclerkofcourt.org**

FILED DATE: 2/15/2019 2:54 PM   2019CH02050

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

• Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
2/19/2019 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH02050

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

CRYSTAL WILSON, individually and on behalf )
of classes of similarly situated individuals, )
                                        )
                 *Plaintiff,*      )
                                          )
                v.                      )
                                          )
REDBOX AUTOMATED RETAIL, LLC, )
                                          )
                                          )

No. 2019-CH-02050

Hon. Pamela M. Meyerson

Cal.: 11

## NOTICE OF MOTION

To:

REDBOX AUTOMATED RETAIL, LLC
c/o CT Corporation System
208 S. LaSalle St., Suite 814
Chicago IL 60604

      On June 17, 2019 at 9:30 a.m. or as soon thereafter as counsel may be heard, I shall appear

before the Honorable Pamela M. Meyerson or any Judge sitting in that Judge's stead, in courtroom

2305, located at the Richard J. Daley Center, 50 W. Washington St., Chicago, Illinois 60602, and

present *Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class

Certification Ruling Pending Discovery.*

| | | | |
|---|---|---|---|
| **Name:** | McGuire Law, P.C. | **Attorney for:** | Plaintiff |
| **Address:** | 55 W. Wacker Dr., 9th Fl. | **City:** | Chicago, IL 60601 |
| **Telephone:** | (312) 893-7002 | **Firm ID.:** | 56618 |

- 1 -

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on February 19, 2019, a copy of Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery was sent to Defendant's Registered Agent by way of first class mail by depositing the same in a United States Mailbox.

/s/ Eugene Y. Turin
Eugene Y. Turin, Esq.

FILED DATE: 2/19/2019 12:00 AM 2019CH02050

- 2 -

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
2/19/2019 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH02050

## CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CRYSTAL WILSON, individually and on behalf )
of classes of similarly situated individuals, )
                                   )
                *Plaintiff,*         )
                                     )
                v.                     )
                                       )
REDBOX AUTOMATED RETAIL, LLC, )
                                     )
                                     )
              *Defendant.*        )

No. 2019-CH-02050

Hon. Pamela M. Meyerson

Cal.: 11

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY

Plaintiff Crystal Wilson ("Plaintiff"), through her undersigned counsel, pursuant to 735 ILCS 5/2-801, hereby moves this Honorable Court for entry of an Order certifying the below-proposed Classes, appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. Alternatively, Plaintiff requests, to the extent the Court determines further evidence is necessary for the purposes of proving any element of 735 ILCS 5/2-801, that the Court defer consideration of Plaintiff's Motion for Class Certification pending a reasonable period to complete discovery, which has not yet commenced with respect to such issues. *See, e.g., Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011). In support of her Motion, Plaintiff submits the following Memorandum of Law.

Dated: February 18, 2019

Respectfully submitted,

CRYSTAL WILSON, individually and on behalf of classes of similarly situated individuals

By: /s/ Eugene Y. Turin
     One of Plaintiff's Attorneys

1

Eugene Y. Turin
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

FILED DATE: 2/19/2019 12:00 AM   2019CH02050

2

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR CLASS CERTIFICATION OR, ALTERNATIVELY,
## FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY

This Court should certify three national classes of cellular telephone consumers who received unauthorized text messages from Defendant REDBOX AUTOMATED RETAIL, LLC, ("Defendant" or "Redbox"). As part of an effort by Defendant to contact members of its "Redbox Text Club" to promote its products and services, Defendant violated federal law by transmitting, *en masse*, unauthorized text message advertisements to the cellular telephones of consumers in Illinois and elsewhere in the surrounding region. After receiving such unauthorized text messages from Defendant, Plaintiff Wilson brought suit on behalf of three nationwide classes, alleging that Defendant's misconduct violates the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

### THE TCPA

"In enacting the TCPA [in 1991], Congress noted the nuisance of rampant telemarketing and the consequent costs of money, time, and the invasion of privacy to consumers." *See Abbas v. Selling Source, LLC*, No. 09CV3413, 2009 WL 4884471, at *7 (N.D. Ill. Dec. 14, 2009) (internal citations omitted); *see also Mims v. Arrow Financial Services*, 132 S.Ct. 740, 744 (2012); *Lozano v. Twentieth Century Fox*, 702 F. Supp. 2d 999, 1008 (N.D. Ill. 2010). Consequently, the TCPA prohibits parties from making:

> any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

3

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The TCPA also further prohibits companies from initiating telephone solicitations, via phone call or text message, to any number registered on the National Do Not Call ("DNC") registry. *See* 47 C.F.R. § 64.1200(c)(2). These same regulations also prohibit companies from making calls or sending texts to non-business phone numbers before 8 a.m. and after 9 p.m. *See* 47 C.F.R. § 64.1200(c)(1).

The Federal Communication Commission – which, under 47 U.S.C. § 227(b)(2), is required to "prescribe regulations to implement the requirements" of the TCPA – has made clear that the transmission of text messages falls under the purview of the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. R. 14014, 14115, 2003 WL 21517853 (2003) (ruling that the TCPA prohibition on unsolicited calls "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls provided the call is made to a telephone number assigned to such service.")

The TCPA sets statutory damages in the amount of $500.00 per violation, with an allowance for trebling. *See* 47 U.S.C. § 227(b)(3)(B-C).

## THE FACTS

Typical of most actions brought under the TCPA, the facts in this case are relatively straightforward. Defendant is a provider of movie and video game rental kiosks that are located throughout the country. (Complaint at ¶¶ 17.) Defendant, in an effort to promote its products and services, regularly sends text message advertisements to its customers through its "Redbox Text Club." (*Id.* at ¶¶ 19–20, 22.) To place these calls, Defendant employed certain technology allowing for the bulk transmission of text messages—equipment that the FCC has found to be an "automatic dialing system" subject to the provisions of the TCPA. (*Id.* ¶ 33.) However,

4

FILED DATE: 2/19/2019 12:00 AM 2019CH02050

FILED DATE: 2/19/2019 12:00 AM  2019CH02050

Defendant failed to honor requests by its customers, including Plaintiff, to not receive such automated text message advertisements. (Complaint at ¶¶ 20–21.) Even though Plaintiff specifically set her notification settings to not receive any text messages from Redbox, Plaintiff has received numerous automated text message advertisements from Defendant in violation of the TCPA. (Complaint at ¶¶ 19, 22, 24.) Furthermore, since Plaintiff was a member of the DNC registry, Defendant's text message advertisements were also in violation of the DNC regulations under the TCPA. (*Id.* at ¶¶ 16, 70–74.) Finally, because a number of the messages were sent to Plaintiff before 8:00 a.m., they were also in violation of the TCPA's after-hours rules. *See* 47 C.F.R. § 64.1200(c)(1). As evidenced by the numerous consumer complaints online, Plaintiff Wilson – and hundreds or thousands of other individuals – received similar such unauthorized text message advertisements from Defendant. (*Id.* at ¶ 29.)

### *The Proposed Classes*

Plaintiff seeks to represent three nationwide Classes. These nationwide Classes consist of an "ADTS Class", an "After-Hours Class", and a DNC List Class" (All Three of these classes will be referred to as "Classes"). The first Class that Plaintiff seeks to represent is the "ATDS. Class" which is defined as: All persons in the United States who, during the four (4) years preceding the filing of this Class Action Complaint through the date on which class certification is granted, received one or more text messages promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant, at a time when such persons had not expressly consented in writing to be sent such message(s).

The second Class that Plaintiff seeks to represent is the "After-Hours Class". The "After-Hours Class" is defined as: All persons in the United States who, within any 12-month period during the four (4) years preceding the filing of this Class Action Complaint through the date on

5

which class certification is granted, received more than one text message promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant before 8:00 a.m. and after 9:00 p.m. in the recipient's time zone.

Lastly, Plaintiff seeks to represent the "DNC List Class". The "DNC List Class" is defined as: All persons in the United States who, within any 12-month period during the four (4) years preceding the filing of this Class Action Complaint through the date on which class certification is granted, received more than one text message promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant more than 30 days after registering their telephone number on the National Do-Not-Call Registry.

As explained below, the Classes defined above clearly satisfy each of the four certification prongs under Section 2-801 of the Illinois Code of Civil Procedure—numerosity, commonality, adequacy of representation, and fair and efficient adjudication. In the end, a class action is not only appropriate here, it is also the only way that the members of the punitive Classes listed above will obtain appropriate redress for Defendant's unlawful conduct.

## ARGUMENT

### I. Standards for Class Certification

To obtain class certification, it is not necessary for the plaintiff to establish that she will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks and citation omitted). As such, in determining whether to certify a proposed class, the court accepts the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 880 N.E.2d 653, 655 (Ill. App. Ct. 2007).

6

FILED DATE: 2/19/2019 12:00 AM 2019CH02050

To proceed with a class action, the Plaintiff must demonstrate "prerequisites for the maintenance of a class action" as set forth in Section 2-801 of the Illinois Code of Civil Procedure, which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Classes, and the Court should therefore certify the proposed Classes.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and, therefore, "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 819 (Ill. App. Ct. 2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 880 N.E.2d at 656. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the

7

named plaintiffs . . . . If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (citations omitted).

Accordingly, as explained further below, all the prerequisites for class certification have been met here, despite the fact that Plaintiff has not yet had an opportunity to engage in any discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending discovery and submission of supplemental briefing.

## A.    The Requirement of Numerosity Is Satisfied

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "to join such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 586 N.E.2d 461, 464 (Ill. App. Ct. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 642–43 (Ill. 1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members, but must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiff alleges that there are thousands of members for each of the Punitive Classes listed above. (Compl. ¶ 50.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the class. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where class numerosity information is in the possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling.) In this case,

8

FILED DATE: 2/19/2019 12:00 AM    2019CH02050

the allegations of the Complaint, as well as common sense based on the Defendant's practices, adequately demonstrate numerosity. The nature of Defendant's business is such that these text messages are automatically generated and sent to thousands of individuals who are members of Defendant's "Customer-Loyalty" program, and Defendant's use of generic messages and a short code to send these messages underscores the fact that these messages were sent *en masse* to lists of cellular telephone numbers. (Complaint at ¶¶ 22, 33, 50.) The number of Class members is almost certainly in the thousands, a number that more than satisfies the numerosity requirement. *See Kulins v. Malco, A Microdot Co., Inc.*, 459 N.E.2d 1038, 1046 (Ill. App. Ct. 1984) (finding that in Cook County, 30 class members was sufficient to satisfy numerosity to lessen the backlog of cases before the court); *Carrao v. Health Care Serv. Corp.*, 454 N.E.2d 781, 789 (Ill. App. Ct. 1983) (allegation in complaint of over 1,000 class members clearly supports finding that joinder would be impracticable).

There is little question that there is a sufficient number of Class members to satisfy the numerosity requirement. Additionally, the members of the putative Classes here can be easily and objectively identified from the records of Defendant, its agents, and telephone carriers, once those records are produced. Furthermore, joinder of the Class members claims would be completely impracticable because members of the proposed Classes are disbursed throughout the state, and possible the country, and because each proposed Class member's claim is relatively small such that absent a class action, few individuals could afford to bring an individual lawsuit over the amounts at issue. *See Gordon*, 586 N.E.2d at 464. Accordingly, the first prerequisite for class certification is met.

## B.    Common Questions of Law and Fact Predominate

The second hurdle imposed by Section 2-801(2) is overcome where there are "questions

9

of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.*, 428 N.E.2d 478, 483 (Ill. 1981); *Steinberg*, 371 N.E.2d at 644–45. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 472 N.E.2d 883, 885–86 (Ill. App. Ct. 1984).

Class certification is not defeated even if there is some possibility that "separate proceedings of some character will be required to determine the entitlements of the individual class members to relief." *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). While the common issues must predominate, they "need not be exclusive." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03-cv-1995, 2004 WL 719278, at \*5 (N.D. Ill. Mar. 31, 2004); *see also Pleasant v. Risk Mgmt. Alternatives, Inc.*, No. 02-cv-6886, 2003 WL 22175390, at \*5 (N.D. Ill. Sept. 19, 2003) (certifying class where "the central factual inquiry will be common to all" the class members); *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 242 (N.D. Ill. 2001) (finding predominance met in class action where liability is predicated on the same legal theory and the same alleged misconduct). In fact, common legal and factual issues have been found to predominate in other TCPA class actions where the class members' claims arose under the TCPA and where the claims focused on the same course of conduct by the defendants. *See, e.g., CE Design v. Beaty Const., Inc.*, 07-cv-3340, 2009 WL 192481, \*5 (N.D. Ill. Jan. 26, 2009); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 294–95 (N.D. Cal. 2013).

As alleged in this case, all members of the proposed Classes share a claim that arose out of the same activity of Defendant, that is based on the same legal theory, and that implicates the following issues of fact: whether Defendant sent automated text message advertisements to the

10

cellular phones of persons who did not provide Defendant with written consent to send such messages (the ATDS Class); whether Defendant sent text message advertisements to individuals who were registered on the DNC registry (the DNC List Class), whether Defendant sent text message advertisements to individuals before/after the established prohibited hours (the After-Hours Class), whether Defendant's unauthorized conduct was willful, and whether Defendant should be enjoined from engaging in such conduct.

As alleged, and as will be set forth in the evidence to be obtained, it cannot be disputed that Defendant engaged in a common course of conduct by sending, or causing to be sent via its agents, hundreds or thousands of nearly identical unauthorized messages from an identical short code to the members of the Classes. *See Kavu v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) (finding commonality satisfied where defendant engaged in a common course of conduct by obtaining a list of fax numbers in the same way and sending the same fax to all recipients on the list in a short amount of time in an effort to generate business); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 141 (N.D. Ill. 2009). Any potential individual issues remaining after the above common issues are decided would be *de minimis* in comparison to these common issues. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff has satisfied this low hurdle to certification.

## C. Adequate Representation

The third element of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The Class Representative's interests must be generally aligned with those of the members of the Classes, and Class Counsel must be "qualified, experienced and generally able to conduct the proposed

11

FILED DATE: 2/19/2019 12:00 AM 2019CH02050

litigation." *See Miner*, 428 N.E.2d at 482; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 574 N.E.2d 760, 763 (Ill. App. Ct. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 530 N.E.2d 994, 1000 (Ill. App. Ct. 1988); *Gordon*, 586 N.E.2d at 466.

In this case, Plaintiff has the same interests as the proposed members of the Classes – all have allegedly received unauthorized text message advertisements from Defendant in violation of the TCPA – and her pursuit of this matter has demonstrated that she will be a zealous advocate for the Class.

Further, proposed class counsel has regularly engaged in major complex and class action litigation and has extensive experience in consumer class action lawsuits involving telephone technology. (*See* Declaration of Eugene Y. Turin ("Turin Decl."), attached hereto, at ¶ 5.) Proposed class counsel also has an in-depth knowledge of the substantive law at issue in this case, having been involved in other TCPA class actions. (*Id.*) Further, Plaintiff's counsel has been appointed as class counsel in several complex consumer class actions, including similar TCPA class actions. *See, e.g., Valladares et al v. Blackboard, Inc.* (Cir. Ct. Cook County, Ill. 2016); *Hooker et al. v. Sirius XM Radio, Inc.* (E.D. Va. 2016); *Seal et al. v. RCN Telecom Services, LLC*, (Cir. Ct. Cook County, Ill. 2017). Accordingly, the proposed Class representative and proposed class counsel will adequately protect the interests of the Classes, satisfying Section 2-801(3).

## D.    Fair and Efficient Adjudication of the Controversy

The final prerequisite to class certification is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In

12

FILED DATE: 2/19/2019 12:00 AM 2019CH02050

applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 586 N.E.2d at 467. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Id.*; *Purcell & Wardrope Chtd*, 530 N.E.2d at 1001 ("the predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute.") Thus, the fact that numerosity, commonality and predominance, and adequacy of representation have been demonstrated in the instant case makes it "evident" that the appropriateness requirement is satisfied as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of consumer protection.") A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. Here, absent a class action, most members of the Classes would find the cost of litigating their statutorily-limited claim to be prohibitive, and such multiple individual actions would be judicially inefficient.

Certification of the proposed Classes is another needed step toward ensuring that consumers cease being harassed by unauthorized SMS messages and also to compensate those individuals who have had had their statutorily-protected privacy rights violated and/or who have wrongfully been charged money for such SMS messages. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of members of the Classes would be

13

able to obtain redress or that Defendant would willingly cease sending unauthorized text message advertisements. Accordingly, proceeding with this matter as a class action is an appropriate method to fairly and efficiently adjudicate the controversy.

## CONCLUSION

For the reasons discussed above, the requirements of 735 ILCS 5/2-801 are satisfied. Therefore, Plaintiff Crystal Wilson respectfully requests that the Court enter an order certifying the proposed Classes pursuant to Section 2-801 of the Code of Civil Procedure, appointing Plaintiff as Class Representative, appointing Eugene Y. Turin of McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable and just. Alternatively, the Court should defer ruling on this Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: February 18, 2019                     Respectfully submitted,

                                             CRYSTAL WISLON, individually and on behalf of
                                             classes of similarly situated individuals

                                             By: /s/ Eugene Y. Turin
                                                 One of Plaintiff's Attorneys

Eugene Y. Turin
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgp.com

14

FILED DATE: 2/19/2019 12:00 AM    2019CH02050

FILED DATE: 2/19/2019 12:00 AM 2019CH02050

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

CRYSTAL WILSON, individually and on behalf )
of classes of similarly situated individuals, )
                                   )
                                   )    No. 2019-CH-02050
                  *Plaintiff,*      )
                                     )    Hon. Pamela M. Meyerson
        v.                         )
                                     )    Cal.: 11
REDBOX AUTOMATED RETAIL, LLC,      )
                                     )
                                     )
                *Defendant.*    )

## DECLARATION OF EUGENE Y. TURIN

I, Eugene Y. Turin, hereby aver, pursuant to 735 ILCS 5/1-109, that I have personal knowledge of all matters set forth herein unless otherwise indicated, and would testify thereto if called as a witness in this matter.

1.     I am an adult over the age of 18 and a resident of the State of Illinois.

2.     I am fully competent to make this Declaration and I do so in support of Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery.

3.     I am an associate of the law firm McGuire Law, P.C. I am licensed to practice law in the State of Illinois, and I am one of the attorneys representing the Plaintiff in this matter.

4.     McGuire Law, P.C. is a litigation firm based in Chicago, Illinois that focuses on class action litigation, representing clients in both state and federal trial and appellate courts throughout the country.

5.     The attorneys of McGuire Law, P.C. have regularly engaged in complex litigation on behalf of consumers and have extensive experience prosecuting class action lawsuits similar in

1

size and complexity to the instant case. I and/or attorneys at my firm have served as class counsel in numerous complex consumer class actions. *See, e.g.*, *Shen et al v. Distributive Networks, Inc.* (N.D. Ill. 2007); *McFerren et al v. AT&T Mobility, LLC* (Sup. Ct. Fulton County, Ga. 2008); *Gray et al v. Mobile Messenger Americas, Inc. et al.,* (S.D. Fla. 2008); *Gresham et al v. Keppler & Associates, LLC et al.,* (Sup. Ct. Los Angeles County, Cal. 2008); *Weinstein et al v. The Timberland Co., et al.* (N.D. Ill. 2008); *Sims et al v. Cellco Partnership* et al., (N.D. Cal. 2009); *Van Dyke et al v. Media Breakaway, LLC et al.,* (S.D. Fla. 2009); *Paluzzi, et al. v. mBlox, Inc., et al.*, (Cir. Ct. Cook County, Ill. 2009); *Valdez et al v. Sprint Nextel Corporation* (N.D. Cal. 2009); *Parone et al v. m-Qube, Inc. et al.,* (Cir. Ct. Cook County, Ill. 2010); *Satterfield et al v. Simon & Schuster* (N.D. Cal. 2010); *Espinal et al v. Burger King Corporation et al.,* (S.D. Fla. 2010); *Lozano v. Twentieth Century Fox*, (N.D. Ill. 2011); *Williams et al v. Motricity, Inc. et al.,* (Cir. Ct. Cook County, Ill. 2011); *Walker et al v. OpenMarket, Inc. et al.,* (Cir. Ct. Cook County, Ill. 2011); *Schulken at al v. Washington Mutual Bank, et al.*, (N.D. Cal. 2011); *In re Citibank HELOC Reduction Litigation* (N.D. Cal 2012); *Kramer et al v. Autobytel* et al., (N.D. Cal. 2011); *Rojas et al v. Career Education Co.* (N.D. Ill. 2012); *Ellison et al v. Steven Madden, Ltd.* (C.D. Cal. 2013); *Robles et al v. Lucky Brand Dungarees, Inc.* et al., (N.D. Cal. 2013); *Pimental et al v. Google, Inc. et al.,* (N.D. Cal. 2013); *In re Jiffy Lube Spam Text Litigation* (S.D. Cal. 2013); *Lee et al v. Stonebridge Life Ins. Co. et al.*, (N.D. Cal. 2013); *Gomez et al v. Campbell-Ewald Co.* (C.D. Cal. 2014); *Murray et al. v. Bill Me Later, Inc.*, 12-cv-4789 (N.D. Ill. 2014); *Valladares et al v. Blackboard, Inc.* (Cir. Ct. Cook County, Ill. 2016); *Hooker et al. v. Sirius XM Radio, Inc.* (E.D. Va. 2016); *Seal et al. v. RCN Telecom Services, LLC*, (Cir. Ct. Cook County, Ill. 2017); *Manouchehri, et al. v. Styles for Less, Inc., et al.*, (S.D. Cal. 2017); *Vergara et al. v. Uber Technologies, Inc.* (N.D. Ill. 2017); *Flahive et al v. Inventurus Knowledge Solutions, Inc.* (Cir. Ct.

2

Cook County 2017).

6.      I am a graduate of Loyola University Chicago School of Law. I have been practicing law since 2014 and have been admitted to practice in the Illinois Supreme Court and in the U.S. District Court for the Northern District of Illinois.

7.      McGuire Law, P.C. has diligently investigated the facts and claims in this matter and will continue to diligently investigate and prosecute this matter. McGuire Law, P.C. has also dedicated substantial resources to this matter and will continue to do so. McGuire Law, P.C. has the financial resources necessary to fully prosecute this action through trial and to provide the necessary and appropriate notice to the class members should this proposed class be certified.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 18, 2019, in Chicago, Illinois.

/s/ Eugene Y. Turin
Eugene Y. Turin

FILED DATE: 2/19/2019 12:00 AM   2019CH02050

3