**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CRYSTAL WILSON, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No.: 1:19-CV-01993 |
| vs. ) ) | Hon. Judge Andrea R. Wood |
| REDBOX AUTOMATED RETAIL, LLC, ) ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff, Crystal Wilson, by and through her attorneys, states as follows in opposition to Defendant, Redbox Automated Retail, LLC's ("Redbox") Motion to Compel Arbitration ("Motion to Compel"). (Dkt. 13.)

**I.  INTRODUCTION**

This case is about a Defendant who refused to stop inundating Plaintiff with incessant automated text messages at all hours of the day, including for weeks after she had specifically instructed Defendant to stop sending further messages. (Complaint at ¶¶ 19, 22, 24.) Presumably recognizing the strength of Plaintiff's claims, Defendant now attempts to duck class-wide liability with a motion to compel individual arbitration. The Motion is without merit.

Arbitration is a matter of contract, and Plaintiff cannot be compelled to arbitrate unless Defendant proves the existence of a duly-formed contract to arbitrate. Defendant cannot do so for three primary reasons. First, the Motion fails to demonstrate that Plaintiff assented to the Terms of Use during her initial enrollment in 2007. Second, the Motion fails to demonstrate that Plaintiff assented to the amended version of Defendant's Terms of Use that became effective in November 2016. Because Plaintiff never agreed to be bound by the Terms of Use during her initial enrollment, there were no Terms of Use capable of amendment in effect between Plaintiff and Defendant in November 2016. Third, neither Defendant's kiosk nor its website, at any time in or after November 2016, has adequately notified Plaintiff that she would become bound to the Terms

1

of Use by paying for a rental on the kiosk or by signing into her account on the website. Accordingly, Plaintiff could not possibly have manifested her assent to the Terms of Use while interacting with either Defendant's sign-in webpage or its kiosk payment screen during the relevant time period. Mutual assent is an essential element of contract formation, and without it there is no basis for Defendant to compel arbitration in this case.

Defendant has failed to demonstrate the existence of a contract to arbitrate, and the Motion should be denied.

## II. BACKGROUND

Plaintiff does not dispute using Defendant's video rental services. (Complaint at ¶ 18.) However, during the relevant time period, Plaintiff specifically instructed Defendant not to send any text messages to the telephone number that she had provided to Defendant as part of her customer-loyalty account. (*Id.* at ¶ 19.) Nonetheless, Defendant failed to honor Plaintiff's request and continued bombarding Plaintiff with automated text message advertisements. (*Id.* at ¶¶ 22, 24.) According to Defendant, Plaintiff is compelled to arbitrate these claims because she agreed to Defendant's Terms of Use. Defendant argues that Plaintiff agreed to be bound by the Terms of Use when she continued to use Redbox's services after receiving an email notifying her of an amendment to the Terms of Use in October 2016, by using a Redbox kiosk to purchase movie rentals after November 2016, and by signing in to her account on the Redbox.com website after September 2018. (Mot. to Compel at 6–9.) However, as attested to by Plaintiff, Plaintiff never saw much less agreed to be bound by Defendant's Terms of Use, including the arbitration provision incorporated therein. (*See* Declaration of Crystal Wilson, attached hereto as <u>Exhibit 1</u>, at ¶¶ 7–12.)

As shown in the screenshots attached hereto as <u>Exhibit 2</u>, Defendant's sign-up process did not require that Plaintiff agree to any Terms of Use.[1] The disclosures of the Terms of Use that Defendant rests its Motion to Compel on (*see* Exhibits 2 and 3 to Mot. to Compel, Dkt. 13-1, at

---

[1] All exhibits referenced herein are attached to the Declaration of Eugene Y. Turin that is being filed concurrently herewith.

2

34, 36), are not shown anywhere on the sign-up pages. (*See* Exhibit 2 to Turin Decl.) More importantly, Defendant did not utilize the same Sign In screen for the entire time period at issue. Specifically, as shown in the screenshots attached hereto as Exhibit 3, as recently as September 30, 2018, Defendant's website appears to have utilized a Sign In screen that **did not** include the "sign-in wrap" notice that Defendant now relies on (*see* Exhibit 3 to Mot. to Compel, at 36), and simply utilized a "browse wrap" agreement at the bottom of the page. Indeed the Declaration of Michael Feldner that Defendant has submitted in support of its Motion to Compel (Dkt. 13-1 at 2–5) conveniently fails to specify during what time period the Sign In screen that Defendant cites to was active. (Feldner Decl. at ¶ 8.) Thus, while Defendant explains that the "My Bag" screen that Plaintiff would have interacted with on its kiosks was "substantially the same since at least 2012" (*id.* at ¶ 7), there is no evidence whether Plaintiff actually ever interacted with the Sign In screen that Defendant relies on, and when she would have done so.

Finally, Plaintiff also attests that at no point in her interactions with Defendant's website or its kiosks was she aware that by entering "Pay Now" or "Sign In" that she was doing anything other than completing her transaction and was not expressing her assent to Defendant's Terms of Use by pressing those buttons. (Wilson Decl. at ¶¶ 9, 11.)

**III.    LEGAL STANDARD**

Whether an arbitration agreement is valid and should be applied is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Courts should generally "apply ordinary state-law principles that govern the formation of contracts" (*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) to determine whether the parties agreed to arbitration as the Federal Arbitration Act "places arbitration agreements on equal footing with other contracts[.]" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). As the party seeking to compel arbitration, Defendant "bear[s] the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence[.]"

*Mohammed v. Uber Techs., Inc.*, No. 16-cv-2537, 2018 WL 1184733, at *5 (N.D. Ill. Mar. 7, 2018).

Thus, "a district court considering . . . an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Regan*, 85 F.Supp.3d at 1360 (internal citations omitted). And where a party opposes arbitration on the ground that he or she never formed the purported agreement serving as the basis for a motion to compel arbitration, as is the case here, "there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the [Federal Arbitration] Act." *Regan*, 85 F.Supp.3d at 1362.

## IV. ARGUMENT

No contract to arbitrate was ever formed between Plaintiff and Defendant. Defendant has failed to demonstrate Plaintiff's assent to the Terms of Use or its incorporated arbitration provision, because (1) Defendant had no Terms of Use in effect at the time Plaintiff first enrolled in its services in 2007 or for the decade following her enrollment; (2) Defendant's e-mail notifying users of an amendment to the Terms of Use, effective November 30, 2016, had no bearing on Plaintiff, who had never entered into the Terms of Use in the first place (and thus there were no Terms of Use to amend); and (3) Defendant has failed to establish that Plaintiff ever assented to the November 30, 2016 version of the Terms of Use, the first to include an arbitration provision, either by using one of its kiosks or its website.[2]

### A. Plaintiff Did not Assent to the Terms of Use When She Enrolled in Defendant's Services in October 2007.

As a threshold matter, Plaintiff was not asked to assent, and thus could not possibly have assented, to the Terms of Use or any other terms when she initially enrolled in Defendant's website, and in fact it does not appear that the Terms of Use were yet in existence at the time of Plaintiff's

---

[2] Unlike many consumer contracts of adhesion, Defendant's Terms of Use do not contain a "delegation clause" and Defendant specifically seeks for *the Court* to find that its arbitration provision is enforceable and "compel arbitration of Plaintiff's claims." (Mot. to Compel at 1.) To the extent not otherwise raised, Plaintiff disputes that she agreed to any portion of Defendant's Terms of Use, including any delegation clause that could be inferred from therein.

4

initial enrollment.

Although the Motion states that "Plaintiff has been a customer of Redbox since before 2012" (Mot. to Compel at 5) (citing Feldner Dec. ¶ 12, Ex. 7)), that understates things by about half a decade. As Redbox's own records demonstrate, Plaintiff has been a customer of Redbox since October 27, 2007, when she initially enrolled as a Redbox member. (*See id.*, Ex. 7; ECF No. 13-1 at 44) (indicating Plaintiff has been "Member Since 10/27/2007").) Critically, Redbox submits no evidence that *any* version of the Terms of Use even existed when Plaintiff enrolled in Redbox's services on October 27, 2007.

Moreover, judicially-noticeable evidence demonstrates that there were no Terms of Use nor any other terms or conditions, much less any containing an arbitration provision, made available to visitors of Defendant's website in 2007. (*See* Turin Decl. ¶ 4; Ex, 4 to Turin Decl. 4.)[3]

Because the Terms of Use were not yet in existence in 2007, Plaintiff plainly did not assent to any version of the Terms of Use when she enrolled in Defendant's website on October 27, 2007, much less agree to arbitrate any disputes with Redbox at that time.

### B. Plaintiff Has Never Assented to the November 30, 2016 Version of the Terms of Use.

Although it is unclear when the Terms of Use first came into existence – the Motion is accompanied by no evidence on the point – Defendant acknowledges that the arbitration provision that is the subject of the Motion was added to the Terms of Use via an amendment that became effective on November 30, 2016. Defendant makes no attempt to establish (and has presented no evidence to suggest) that Plaintiff assented to any version of the Terms of Use in effect prior to the

---

[3] Plaintiff respectfully requests, pursuant to Federal Rule of Evidence 201, that the Court take judicial notice of the webpage depicted in Exhibit 4 to the Turin Declaration, which reflects the way the enrollment page on Redbox.com existed on August 8, 2007, the date closest to October 27, 2007, when Plaintiff enrolled in Defendant's website, for which archived copies are available on the Wayback Machine Internet Archive. The URL at which the archived version of the page may be accessed is as follows: https://web.archive.org/web/20070808065129/https://www.redbox.com/Account/CreateAccount. aspx. *See Erickson v. Nebraska Machinery Company*, 2015 WL 4089849, *1 n.1 (N.D. Cal. 2015) (archived copies of websites accessible on the Wayback Machine Internet Archive are judicially noticeable).

version effective November 30, 2016.[4]  Rather, the sole focus of the Motion is the Terms of Use that went into effect on November 30, 2016.

Defendant contends that Plaintiff assented to the amended, November 30, 2016 version of the Terms of Use by: (1) receiving an e-mail informing her of the November 30, 2016 amendment to the Terms of Use and thereafter continuing to use Redbox's services; (2) logging in to her account with Redbox, on a webpage containing a statement in fine print at the bottom, far apart from and not reasonably associated with the login prompt, pertaining to the Terms of Use; and (3) pressing a button on a Redbox kiosk to pay for a movie rental, on a digital screen containing a statement in fine print at the bottom, far apart from and not reasonably associated with the button, pertaining to "Terms."  None of these three circumstances comes close to manifesting Plaintiff's assent to the Terms of Use, as discussed below. The Motion should be denied.

> **1.  Defendant Fails to Establish that Plaintiff Assented to the Terms of Use by Receiving the October 20, 2016 E-Mail and then Continuing to Use Redbox's Services.**

Defendant argues that Plaintiff assented to the November 30, 2016 version of the Terms of Use by receiving an e-mail from Redbox on October 20, 2016, informing her of an amendment to the then-existing Terms of Use that became effective November 30, 2016, and by thereafter continuing to use Redbox's services.  (*See* Mot. at 8) (citing Feldner Decl., Exs. 4, 8; ECF No. 13-1 at 38, 58) (copy of e-mail purporting to notify members of amendment to Terms of Use and records reflecting transmission of e-mail to Plaintiff).  The argument is without merit.

It is undisputed that Plaintiff did not assent to the Terms of Use or any other potentially-enforceable agreement with Redbox when she enrolled in 2007 (*see* Feldner Decl., Ex. 7; ECF No. 13-1 at 44) (indicating Plaintiff has been "Member Since 10/27/2007), and Defendant has not even attempted to demonstrate that Plaintiff assented to any other version of the Terms of Use in between her initial enrollment on October 27, 2007 and Redbox's transmission of the e-mail to her

---

[4] Defendant has not submitted copies of any other version of the Terms of Use in existence at any time between October 27, 2007 (the date of Plaintiff's enrollment) and November 30, 2016 (the effective date of the "updated" version of the Terms of Use that Redbox attempts to enforce in the Motion).

6

on October 20, 2016. Thus, Plaintiff's mere receipt of the e-mail on October 20, 2016 (and her continued use of Defendant's services after receiving it) plainly could not have manifested her assent to the November 30, 2016 amendment to the Terms of Use, which she had never entered into to begin with. In other words, because Plaintiff, at the time the email was sent on October 20, 2016, had never previously assented to any iteration of the Terms of Use – one of the essential elements of contract formation – there was plainly no contractual relationship between Plaintiff and Redbox capable of amendment or modification. Accordingly, as it relates to Plaintiff, the November 30, 2016 amendment to the Terms of Use was a nullity.

Moreover, Defendant's October 20, 2016 email simply stated that "[y]our continued use of the Redbox platforms . . . is your consent to these updated policies" (Mot. at 5; Feldner Decl., Ex. 4), which, again, could not possibly have had any bearing on Plaintiff's relationship with Redbox since there was no governing version of the Terms of Use then in effect as between Plaintiff and Redbox capable of "updat[ing]." But even if Plaintiff had previously assented to some version of the Terms of Use at the time the October 2016 e-mail was sent (and she had not), Defendant fails to demonstrate that Plaintiff's mere receipt of the e-mail, without opening it, clearly and conspicuously notified her of the nature of the amendment to the Terms of Use that was to become effective on November 30, 2016. Indeed, the Motion is accompanied by no evidence reflecting the subject line of the email or that otherwise indicates that the mere receipt of the e-mail would have put its recipient on reasonable notice of the subject matter of its contents, without the need to open it and actually read it. Accordingly, even if Plaintiff had assented to some prior version of the Terms of Use at the time she was sent the e-mail on October 20, 2016, Plaintiff's mere receipt of the e-mail and her subsequent continued use of Redbox's services would nonetheless have failed to evidence her assent to the amended, November 30, 2016 version of the Terms of Use or the arbitration provision incorporated therein. *See Sgouros*, 817 F.3d at 1034; *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012) ("The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents") (citing Restatement (Second)

7

of Contracts § 19-2); *Jin v. Parsons Corp.*, 366 F. Supp. 3d 104, 109 (D.D.C. 2019) (denying motion compel arbitration and stating "[t]he real issue is not whether [the plaintiff] *received* the emails but whether he *read* them") (emphasis in original).

  The October 20, 2016 e-mail was particularly inadequate to notify Plaintiff of a change in her relationship with Redbox given that Plaintiff was never asked to agree (and indeed did not agree) to any version of the Terms of Use (or any other terms or conditions) during her initial enrollment in Redbox's services on October 27, 2007, or at any time over the following nine years. Plaintiff was never notified, either during her initial enrollment or any time since, that Redbox reserved the right in the future to implement changes to the nature of the parties' relationship or the services provided by Redbox. Moreover, prior to the transmission of the October 20, 2016 e-mail, Redbox had not put Plaintiff on fair notice that it might send her e-mail correspondence to notify her of any such revisions to the nature of their relationship. To the contrary, over the nine years following her initial enrollment on Redbox.com, Plaintiff grew accustomed to receiving a barrage of e-mail correspondence from Redbox on a myriad of subjects, from advertisements to receipts to customer support inquiries, but never (at least not until October 20, 2016) any e-mails concerning the Terms of Use. Under the circumstances, no reasonable consumer would possibly expect Redbox to suddenly change, via one of those numerous e-mails, the terms of their long-running relationship in the manner set forth in the 30-page tome comprising the Terms of Use that became effective on November 30, 2016.

  The decision of the Second Circuit in *Schnabel* confirms the inadequacy of the e-mail notice provided by Defendant here. In *Schnabel*, the Second Circuit affirmed the district court's denial of a motion to compel arbitration where, as here, the defendant had sent the plaintiffs an e-mail, long after their initial enrollment, to notify them of a newly-added arbitration provision. In finding the notice inadequate, the Second Circuit explained that the transmission of the e-mail was "both temporally and spatially decoupled from the plaintiffs' enrollment in" the service, such that "the email would not have raise[d] a red flag vivid enough to cause a reasonable [person] to anticipate the imposition of a legally significant alteration to the terms and conditions" of their

8

relationship with the defendant. *Schnabel*, 697 F.3d at 126 (internal citations omitted). The same holds true here. Defendant's October 20, 2016 email was sent to Plaintiff nearly <u>nine years</u> after she had created an account on Redbox.com – an enrollment process during which Plaintiff was not presented with, was not asked to agree to, and indeed did not agree to any version of the Terms of Use or any other terms or conditions.

Accordingly, Plaintiff's receipt of Defendant's October 20, 2016 e-mail and continued use of Defendant's services plainly did not manifest her assent to the November 30, 2016 Terms of Use. The Motion should be denied.

### 2. Defendant Fails to Establish that Plaintiff Assented to the Terms of Use by Signing into her Account on the Redbox.com Website

Defendant argues that Plaintiff assented to the November 30, 2016 version of the Terms of Use by signing in to the account she had previously created on Defendant's website, without agreeing to anything, on October 27, 2007. This argument is also baseless.

At some point in time around the end of September 2018 – although the Motion fails to indicate exactly when[5] – the following language was added to the bottom of the sign-in screen (as depicted in Exhibit 3 to the Feldner declaration): "By signing in you are agreeing to the . . . Redbox Terms of Use[.]" Before then, and presumably for the remainder of the 12-year period in which Plaintiff has maintained a membership with Redbox, the account sign-in screen on Defendant's website did not contain that statement, or any other statement pertaining to the Terms of Use. (*See* Turin Decl. at ¶ 3; Exhibit 3 to Turin Decl.) (screenshot of sign-in page from September 2018).

Defendant's business records reflect that Plaintiff rented only one movie after the Redbox.com sign-in page was updated to contain the disclosure statement in question in or around September 2018 – specifically, her rental of ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓[6] on December 7, 2018. But the records submitted by Defendant do not indicate whether Plaintiff used her account on the

---

[5] Defendant's declaration in support of its Motion to Compel conveniently fails to address exactly when the Sign In screen that it cites to was put into effect. (Feldner Decl., Dkt. 13-1, at 3 ¶ 8.)
[6] Plaintiff has redacted the title of the film rented by Plaintiff on December 7, 2018 to protect it from public disclosure.

9

Redbox.com website to pay for ▮▮▮▮▮▮▮▮▮▮ or whether Plaintiff paid for the movie at a kiosk without utilizing her online account.

To the extent Plaintiff rented and paid for ▮▮▮▮▮▮▮▮▮▮ on December 7, 2018 entirely by way of a kiosk (i.e., without first selecting the film and paying for the rental on the Redbox.com website), then Plaintiff could not possibly have assented to the November 30, 2016 Terms of Use by signing in to the Redbox.com website at any time. This is because Defendant has submitted no evidence of any other occasion in or after October 2018 (other than the December 7, 2018 rental) when Plaintiff would have used the sign-in page to access her account in order to pay for a movie rental.

Moreover, even if Plaintiff did select and then pay for her rental of ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ on December 7, 2018 after first signing in to her Redbox.com account via a version of the sign-in page that included the fine-print disclosure statement at the bottom – and again, Defendant has failed to present evidence to demonstrate that this is what happened – this too would fall far short of evidencing Plaintiff's assent to the Terms of Use. Although Plaintiff acknowledges that, since approximately October 2018, the sign-in page on Redbox.com has stated that "By signing in you are agreeing to the . . . Redbox Terms of Use" (Mot., Feldner Decl., Ex. 3; ECF No. 13-1 at 36), no pre-existing accountholder of Redbox.com who visited the sign-in page in or after October 2018 would have been clearly and conspicuously notified that, merely by signing into their account, they would be bound to the Terms of Use. As the screenshot reveals, this so-called disclosure statement appears in fine print at the very bottom of the page, far apart from (and not logically associated with) the fields in which visitors are to input their credentials to login to their accounts. Moreover, the disclosure statement misleadingly appears immediately below the statement "Don't have an account? JOIN REDBOX PERKS," thus leading any reasonable consumer who even spots the fine-print disclosure statement at the bottom to believe that it must pertain to individuals without accounts seeking to make ones, not to existing accountholders attempting to sign in. By placing the fine-print disclosure statement immediately below another statement pertaining to prospective enrollees, Redbox induced existing

10

accountholders to forgo even reading the statement (to the extent it was even spotted to begin with given its microscopic print). The appearance and layout of this disclosure language is the exact opposite of the sort of clear and conspicuous notice needed to adequately put Plaintiff on fair notice that should would be bound to the Terms of Use merely by signing in to her pre-existing account. The version of the sign-in page introduced in or about October 2018 was thus incapable of manifesting anyone's assent to the Terms of Use.

Indeed, courts consistently reject such "browsewrap" mechanisms as being incapable of "objective[ely] manifest[ing]" consumers' assent to online pseudo-contracts of adhesion, like the one Defendant asks the Court to bless in this case. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (discussing that under Illinois law formation of a contract requires objective, affirmative manifestation of assent to an agreement). As aptly explained by a court of this district in *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011):

> Browsewrap agreements do "not require the user to manifest assent to the terms and conditions expressly. . . . Instead, browsewrap agreements typically involve a situation where notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink. Thus, a party gives his or her assent simply by using the website.

*Van Tassell*, 795 F. Supp. 2d at 790. Because browsewrap agreements do not require any manifestation of assent to their terms, "the validity of a browsewrap contract hinges on whether the website provided reasonable notice of the terms of the contract." *Van Tassell*, 795 F. Supp. 2d at 791 (citing *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 32 (2d Cir. 2002)). In this case, September 2018 sign-in page is a classic browsewrap configuration that provides insufficient notice of the operative terms, as the disclosure statement is strategically placed at the very bottom of the page (likely requiring scrolling to even notice it), whereas the form fields and "Sign In" button used to navigate through the page appear prominently at the top.[7] The text of the disclosure

---

[7] In *Specht*, a "seminal browsewrap case," the reasoning of which is frequently adopted by district courts of the Seventh Circuit, the Second Circuit considered an online service made available to consumers "at the immediate click of a button" and which was governed by license terms that appeared at the bottom of the screen. *Specht*, 306 F.3d at 32. In rejecting the defendant's bid to enforce the license terms against a consumer who had clicked the button, the Second Circuit

statement is not located adjacent to the Sign In button, nor is it underlined, set off in a different color to draw the user's attention away from the large red Sign In button, or otherwise highlighted in any way. *See, e.g., Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016) (holding that user of Amazon's website was not "put on notice and agreed to mandatory arbitration" when he pressed the "Place your order" button given the inconspicuous nature of the disclosure language).

It is well established that "[a] contract is not formed when 'a website makes its terms of use available via a conspicuous hyperlink . . . but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent." *Motley v. ContextLogic, Inc.*, No. 18-cv-02117, 2018 WL 5906079, at *2 (N.D. Cal. Nov. 9, 2018) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014)). Yet these are precisely the circumstances under which Defendant argues that Plaintiff should be bound to the Terms of Use in this case. The argument is nonsense. No consumer who simply navigated through this page – that is, by entering their credentials and then pressing the Sign In button at the top – can fairly be said to have manifested their assent to the Terms of Use buried in fine print at the very bottom, beneath an altogether different statement on an inapposite topic.

Accordingly, even if Plaintiff's one and only post-October 2018 transaction had been initiated on the Redbox.com website, such that Plaintiff signed in to her account on the updated version of the page containing the disclosure statement, Plaintiff nonetheless did not assent to the Terms of Use in the course of navigating through that page to access her account. And again, Defendant has not even attempted to satisfy its burden to demonstrate any of this, be it by presenting evidence that the disclosure language was first added on any particular date or that Plaintiff ever actually encountered the updated sign-in screen as it baldly asserts she must have – shortcomings which alone warrant the denial of the Motion. *Mohammed*, 2018 WL 1184733, at *5 (party moving to compel arbitration "bear[s] the burden of proving the existence of an

---

explained that "a submerged screen . . . is not sufficient to place consumers on inquiry or constructive notice of those terms," because "there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there." *Id.*

agreement to arbitrate by a preponderance of the evidence").

### 3. Defendant Fails to Establish that Plaintiff Assented to the Terms of Use by Paying for Rentals on a Redbox Kiosk.

Finally, Defendant argues that Plaintiff manifested her assent to the Terms of Use implemented on November 30, 2016 by pressing the "pay now" button to rent movies on Defendant's kiosks. (*See* Feldner Decl., Ex. 2.)

Defendant's reliance on its kiosk screen fares no better than its reliance on the Sign In page on its website. For one thing, much like Defendant's reliance on certain undated interactions Plaintiff purportedly had on the Redbox.com website, Defendant has not submitted any evidence capable of reflecting any particular occasion in which Plaintiff used a kiosk to pay for a movie rental, much less after November 30, 2016 when the Terms of Use were apparently amended to include the subject arbitration provision. Indeed, the records submitted by Defendant do not distinguish between (1) rentals that Plaintiff paid for online prior to her retrieval of the rented disc from a kiosk; and (2) rentals that Plaintiff paid for and retrieved entirely at a kiosk. In the first scenario the kiosk would not have even presented Plaintiff with screen that the Motion relies upon, whereas in the second scenario the kiosk would have presented Plaintiff with that screen. (*See* Crystal Decl. at ¶¶ 4–6.) Defendant's failure to present any evidence on this critical point is fatal to the Motion; absent such evidence, Defendant cannot demonstrate that Plaintiff assented to the Terms of Use and consequently cannot establish that Plaintiff formed a contract to arbitrate.

In any event, even if Defendant had established that Plaintiff both paid for and retrieved a rented movie on one of its kiosks, after November 30, 2016, including at a time when any such kiosk utilized by Plaintiff had been updated to include the revised November 30, 2016 version of the Terms of Use, Plaintiff's act of pressing the "pay now" button on the payment screen would nonetheless have been insufficient as a matter of law to manifest Plaintiff's assent to the Terms of Use. Similar to the website disclosure statement discussed above, the disclosure statement in the bottom-right-hand corner of the kiosk payment screen – which reads "[b]y pressing 'Pay Now' you are agreeing to the Terms" – is found in fine print far apart from and not logically associated

with the "Pay Now" button. In fact, this fine-print statement appears four buttons below the "Pay Now" button, the button it purportedly corresponds to, under the "Terms & Privacy" button,[8] the slightly larger "Sign In" and "Add Promos" buttons, and finally the still-larger-yet "Pay Now" button. These large, colorful buttons dwarf the fine-print disclosure statement buried beneath them.

Discussing an almost identical interaction flow as the one at issue here, and applying Illinois principals of law, the court in *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015) explained that even though the defendant put text *directly* above the sign in button, which stated that by signing in the user agreed to the terms of use, the disclosure was nonetheless "insufficient to give adequate notice." *Id.* at 404. The court explained that the "hyperlink to the 'terms of use' was not in large font, all caps, or in bold," especially in contrast to the "user-friendly and obvious" "'SIGN IN' button" that appeared "in all caps." *Id.* Accordingly, the court concluded that this "sign-in contract of adhesion" was "not binding on [plaintiff]." *Id.* Here, as in *Berkson*, pressing the "pay now" button on the kiosk screen does not cause the "'terms of use' [to] appear in a new screen or in a pop-up window on the same screen," and "[t]he importance of the 'terms of use' [is] obscured by the physical manifestation of assent" to pay for the rental. *Id.* Accordingly, the only thing Defendant's kiosk screen is capable of manifesting is an intention to pay for a movie rental, and certainly not anyone's assent to the Terms of Use.[9] *See id.*

The reality is that Redbox uses this kiosk payment screen in a transparent attempt to distract customers like Plaintiff from noticing the fine print at the bottom prior to pressing the "Pay Now" button at the top, in order to induce them into unwittingly binding themselves – at least in Redbox's

---

[8] Notably, Defendant has submitted no evidence showing the way in which the Terms of Use are displayed (or even if the Terms of Use are displayed at all) to a consumer on a kiosk screen when the "Terms & Privacy" button is pressed on the screen depicted in Exhibit 3 to the Feldner declaration.

[9] The environments in which consumers typically interact with Defendant's kiosks – such as in or outside of busy grocery stores, convenience stores, and gas stations, with other customers often times waiting in line to use the kiosks – renders it even more unlikely that a consumer in such a setting would actually notice, let alone focus on, the fine print disclosure language appearing below the colorful buttons. Under these circumstances, the fine-print disclosure language appearing at the base of the kiosk payment screen comes nowhere close to affording consumers fair notice that by completing a purchase they are agreeing to bound by the Terms of Use.

view – to the 26-some-odd pages of legal gibberish found in the Terms of Use, among it the arbitration provision submerged at page 21. Nothing else explains why the "Pay Now" button is so far from the disclosure statement. The disclosure statement could easily have been placed immediately below the "Pay Now" button, where it most logically belongs given the button's dual purposes of enabling consumers' payments for movie rentals and obtaining what Defendant considers to be those customers' assent to the Terms of Use (the subject of the disclosure statement). Redbox's bid to compel Plaintiff to arbitrate based on her interaction with this kiosk screen (on some unspecified date) is offensive to any consumer's reasonable expectation of fair play, and this Court need not go along. *See, e.g., Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466-67 (S.D.N.Y. 2017) (though defendant required plaintiff to click a "box" next to hyperlink with the defendant's terms of service, court concluded that plaintiff was not put "on inquiry notice of the terms of service," because the page featuring the clickable box featured a much larger "'Next' bar at the bottom of the screen," which "dwarfed" the "I agree to Lyft's Terms of Service" language that is featured in "smallest font on the screen," such that "[a] reasonable consumer would not have understood that the light blue 'Terms of Service' hyperlinked to a contract for review").

Any interaction Plaintiff may have had with one of Defendant's kiosks (and Defendant has presented no evidence demonstrating that such an interaction actually occurred) was plainly insufficient to manifest her assent to the Terms of Use. The Motion should be denied.

## V.   CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: June 4, 2019               By:     /s/ Eugene Y. Turin
                                          Eugene Y. Turin
                                          MCGUIRE LAW, P.C.
                                          55 W. Wacker Drive, 9th Fl.
                                          Chicago, IL  60601
                                          Tel: 312-893-7002
                                          eturin@mcgpc.com

                                          Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 4, 2019, I electronically filed the foregoing *Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Compel Arbitration* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

Dated: June 4, 2019                                       By: */s/*Eugene Y. Turin
                                                                       Eugene Y. Turin